**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| FRANKLIN CRAIG and GERRI CRAIG, husband and wife; JEROME JANUSZ and SHARON JANUSZ, husband and wife; and PATRICE JARDANOWSKI, a single person,<br><br>        Plaintiffs,<br><br>v.<br><br>PORTLAND ORTHOPAEDICS LIMITED, PORTLAND ORTHOPAEDICS INC., SYMMETRY MEDICAL, INC., d/b/a SYMMETRY MEDICAL OTHY, SYMMETRY OTHY, OTHY; ORCHID ORTHOPEDIC SOLUTIONS; MIPRO US, INC., MAXX HEALTH, INC.; MAXX ORTHOPEDICS, INC., PLUS ORTHOPEDICS; SMITH & NEPHEW, INC.; and JOHN DOE CORPORATIONS 1-50,<br><br>        Defendants. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiffs complain and allege as follows:

## JURISDICTION

1.  Subject matter jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. The Plaintiffs are all citizens of Wisconsin. The Defendants are all corporations incorporated in States other than Wisconsin, with their principal places of business in States other than Wisconsin. The amounts in controversy for each Plaintiff, excluding interest and costs, exceeds seventy five thousand dollars ($75,000).

2.  This Court has personal jurisdiction over the Defendants.

3.     The acts giving rise to this action occurred in Wisconsin and the Defendants put products into the stream of commerce knowing that they would be purchased and used in Wisconsin.

## VENUE

4.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this District.

## PARTIES

5.     At all times relevant to this action, Plaintiffs Franklin Craig, and his wife, Gerri Craig, were residents of Milwaukee County, Wisconsin.

6.     At all times relevant to this action, Plaintiffs Jerome Janusz, and his wife, Sharon Janusz, were residents of Milwaukee County, Wisconsin.

7.     At all times relevant to this action, Plaintiff Patrice Jardanowski was a resident of Milwaukee County, Wisconsin.

8.     Upon information and belief, at all times hereinafter mentioned, Defendant PORTLAND ORTHOPAEDICS LIMITED (hereinafter "POL") was and still is a foreign corporation organized and existing pursuant to the laws of Australia, with its principal place of business located at 44 McCauley Street, Matraville, Australia 2039 and P.O. Box 560, Stillwater, Minnesota 55082.

9.     Upon information and belief, at all times hereinafter mentioned, Defendant PORTLAND ORTHOPAEDICS INC. (hereinafter "POI") was and still is a foreign corporation organized and existing pursuant to the laws of Minnesota, and was and still is the United States affiliate of Defendant POL with its principal place of business at 1011 N. Riverside Avenue, St. Clair, MI 48079.

10.     Upon information and belief, at all times hereinafter mentioned, Defendant SYMMETRY MEDICAL, INC. (hereinafter "SYMMETRY") d/b/a SYMMETRY MEDICAL OTHY, SYMMETRY OTHY, OTHY was and still is a foreign corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business at 3724 North State Road 15, Warsaw, IN 46582.

11.     Upon information and belief, at all times hereinafter mentioned, Defendant ORCHID ORTHOPEDIC SOLUTIONS (hereinafter "ORCHID") was and still is a foreign limited liability company organized and existing pursuant to the laws of the State of Delaware, with its principal place of business in Holt, Michigan.

12.     Upon information and belief, at all times hereinafter mentioned, Defendant MIPRO US, INC. (hereinafter "MIPRO") was and still is a foreign corporation organized and existing pursuant to the laws of the State of Pennsylvania, with its principal place of business at 531 Plymouth Road, Suite 526, Plymouth Meeting, PA 19462.

13.     Upon information  and belief, at all times hereinafter mentioned, Defendant MAXX HEALTH, INC. (hereinafter "MHI") was and still is a foreign corporation organized and existing pursuant to the laws of the State of Pennsylvania, with its principal place of business at 531 Plymouth Road, Suite 526, Plymouth Meeting, PA 19462.

14.     Upon information and belief, at all times hereinafter mentioned, Defendant MAXX ORTHOPEDICS, INC. (hereinafter "MOI") was and still is a foreign corporation organized and existing pursuant to the Laws of the State of Pennsylvania, with its principal place of business at 531 Plymouth Road, Suite 526, Plymouth Meeting, PA 19462.

15.     Upon information and belief, at all times hereinafter mentioned, Defendant PLUS ORTHOPEDICS (hereinafter "PO") was and still is a foreign corporation organized pursuant to

the Laws of the State of California, with its principal place of business at 1088 Telesis Court, San Diego, CA 92121.

16.     Upon information and belief, at all times hereinafter mentioned, Defendant SMITH & NEPHEW, INC. (hereinafter "SNI") was and still is a foreign corporation organized and existing pursuant to the Laws of the State of Delaware with its principal place of business in Tennessee.

17.     Upon information and belief, Defendants John Doe Corporations 1 through 10 (the "Corporate Defendants") are corporations, the names and addresses of residences of which are unknown.

## FACTUAL BACKGROUND

18.     Upon information and belief, at all times hereinafter mentioned, Defendants transacted and conducted business in the State of Wisconsin.

19.     Upon information and belief, at all times hereinafter mentioned, Defendants derived substantial revenue from goods and products used in the State of Wisconsin.

20.     Upon information and belief, at all times hereinafter mentioned, Defendants expected or should have expected its acts to have consequences within the State of Wisconsin and derived substantial revenue from interstate commerce within the United States, and within the State of Wisconsin in particular.

21.     Upon information and belief, at all times hereinafter mentioned, all Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, label, package, sell, and distribute the M-Cor Modular Hip System.

22.     Upon information and belief, at all times hereinafter mentioned, the M-Cor Modular Hip System was and still is a trademarked, modular hip replacement prosthetic device which was and

still is designed, manufactured, tested, advertised, promoted, marketed, sold, and distributed to patients, physicians, hospitals, and other healthcare facilities in the United States.

23.     Upon information and belief, at all times hereinafter mentioned, the M-Cor Modular Hip System was designed, manufactured, tested, advertised, promoted, marketed, sold, and distributed by one or more of the Defendants, to patients, physicians, hospitals, and other healthcare facilities in the United States.

24.     Upon information and belief, the M-Cor Modular Hip System is a Class II (special controls) or Class III (PMA) medical device.

25.     Upon information and belief, the Medical Device Amendments to the Food, Drug and Cosmetics Act of 1938 ("MDA") require Class II medical devices, including the M-Cor Modular Hip System, to undergo pre-market approval by the FDA, a process which obligates the manufacturer to design and implement a clinical investigation and to submit the results of that investigation to the FDA.

26.     Upon information and belief, pre-market  approval is a rigorous process that requires a manufacturer to submit what is typically a multi-volume application that includes, among other things, full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a full statement of the device's components, ingredients, and properties and of the principle or principles of operation; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when  relevant, packing and installation  of such device, samples or device components required by the FDA; and a specimen of the proposed labeling.

27.     Upon information and belief, the FDA may grant pre-market approval only if it finds that there is reasonable assurance that the medical device is safe and effective and must weigh any

probable benefit to health from the use of the device against any probable risk of injury or illness from such device.

28.     A medical device on the market prior to the effective date of the MDA; a so-called "grand fathered" device - was and still is not required to undergo pre-market approval.

29.     Upon information and belief, a medical device marketed after the MDA became effective could bypass the rigorous pre-market approval process if the device is claimed to be "substantially equivalent" to a "grand fathered" pre-MDA, i.e., a device approved prior to May 28, 1976. This exception to pre-market approval is known as the "510(k)" process and simply requires the manufacturer to notify the FDA under Section 510(k) of the MDA of its intent to market a device at least 90 days prior to the device's introduction on the market, and to explain the device's substantial equivalence to a pre-MDA predicate device. The FDA may then approve the new device for sale in the United States.

30.     Upon information and belief, the M-Cor Modular Hip System is a Class II or Class III medical device that was submitted for approval by one or more of the Defendants herein to the FDA based on their claim that it was "substantially equivalent" to a "grand fathered" pre-MDA predicate device, to wit: the "S-ROM Femoral Hip System, the Apex Modular Hip and the Margron Hip Replacement based on similarities of design, intended use, material, and manufacturing methods."

31.     Upon information and belief, in reliance upon the claim that the M-Cor Modular Hip System was "substantially equivalent" to a "grand fathered" pre-MDA predicate device, it was approved by the FDA for marketing and sale without clinical trials on or about July 20, 2006.

32.     Upon information and belief, unlike the pre-market approval process, the 510(k) notification process did not call for scrutiny - or even clinical testing - of the safety and effectiveness of the M-Cor Modular Hip System, and simply relied on the representations by one or more of the Defendants, herein that the M-Cor Modular Hip System was "substantially equivalent" to a "grand fathered" pre-MDA predicate device.

33.     Upon information and belief, at times relevant to this lawsuit, each or some of the Defendants  were in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the M-Cor Modular Hip System, and each or some of the Defendants sought FDA approval to do these things.

34.     Upon information and belief, Defendants represented to the general public that the M-Cor Modular Hip System was capable of handling at least the weight of these Plaintiffs and was otherwise suitable to be used for the purposes intended, that is as a prosthetic hip, and that the M-Cor Modular Hip System was of merchantable quality.

35.     On or about April 21, 2009, Plaintiff JEROME JANUSZ had installed an M-Cor Modular Hip  System or components of an M-Cor Modular Hip System, including the femoral stem and neck, which was designed, manufactured,  sold, and/or distributed by Defendants.  On or about April 10, 2012, the M-Cor femoral neck fractured and broke into two pieces requiring a complete, total hip revision.

36.     On or about each June 16, 2009, Plaintiff PATRICE M. JARDANOWSKI had installed an M-Cor Modular Hip System or components of an M-Cor Modular Hip System, including the femoral stem and neck, which was designed, manufactured,  sold, and/or distributed by Defendants.  On or about April 1, 2012, the M-Cor femoral neck fractured and broke into two pieces requiring a complete, total hip revision.

37.     On or about December 23 2008, Plaintiff FRANKLIN CRAIG had installed an M-Cor Modular Hip System or components of an M-Cor Modular Hip System, including the femoral stem and neck, which was designed, manufactured, sold, and/or distributed by Defendants. On or about July 24, 2012, the M-Cor femoral neck fractured and broke into two pieces requiring a complete, total hip revision.

38.     For each Plaintiff, the M-Cor Modular hip fractured and broke in the same location, on the femoral neck of the M-Cor Modular Hip System.

39.     None of these Plaintiffs did anything outside of ordinary use to cause or contribute to the failures of the M-Cor Modular Hip System.

40.     Numerous other M-Cor Modular Hip Systems in numerous other people have similarly prematurely fractured, failed and broke in the same spot, on the femoral neck.

41.     At the time the M-Cor Modular hips were installed in these Plaintiffs, some or all of the Defendants knew or should have known that there was this problem with the M-Cor Modular Hip System.

42.     Still, some or all of these Defendants failed to notify the FDA of this problem.

43.     Still, some or all of these Defendants failed to notify the patients receiving the M-Cor Modular Hip System of this problem.

44.     Still, some or all of the Defendants failed to notify health care providers of this problem.

45.     To the contrary, some or all of these Defendants continued to market, distribute and otherwise represent that the M-Cor Modular Hip System was safe.

46.     The repeat failures on the femoral neck of the M-Cor Modular Hip Systems implanted in the Plaintiffs are as result of a manufacturing defect.

47.     The repeat failures on the femoral neck of the M-Cor Modular Hip Systems implanted in the Plaintiffs are as a result of a design defect.

48.     The repeat failures on the femoral neck of the M-Cor Modular Hip Systems implanted in the Plaintiffs are as a result of inadequate warning or instruction on the installation or use of the M-Cor Modular Hip Systems.

49.     As a consequence of the foregoing failures of the M-Cor Modular Hip Systems, designed, manufactured, sold, and/or distributed by Defendants, Plaintiffs each sustained severe and permanent injuries as herein alleged.

## CAUSES OF ACTION

## DEFENDANTS' NEGLIGENCE

50.     Defendants each had a duty to exercise reasonable care in designing, testing, manufacturing, selling, distributing, marketing, processing, warning consumers and promoting the M-Cor Modular Hip System and to warn health care providers, the FDA and patients of the risks, dangers, and adverse side effects thereof.

51.     Defendants each breached their duties regarding the designing, testing, manufacturing, selling, distributing, marketing, processing, warning consumers, the FDA and health care providers, and promoting the M-Cor Modular Hip System.

52.     Defendants' breaches include, but are not limited to, the following:

        a.      Inadequately and inappropriately designing and/or manufacturing the M-Cor Modular Hip System with the wrong materials, the wrong combination of materials, defective materials and/or materials that were improperly prepared, applied or utilized;

        b.      Inadequately and inappropriately designing and/or manufacturing the M-Cor Modular Hip System such that the Hip Systems did not meet industry standards, did not meet

consumer expectations; did not perform as well as other similar devices and designs readily available in the market; could not withstand the number of stress cycles placed on the femoral neck during normal use or for the expected life span of the product; could not support the weight of the people in whom it was expected to be installed; and could not otherwise perform and last as it should have and as was represented and marketed.

       c.      Failing to conduct appropriate testing to determine whether and to what extent the M-Cor Modular Hip System was safe for users;

       d.      Failing to instruct or warn the FDA, medical community and consumers that the safety of the M-Cor Modular Hip System had not been established;

       e.      Failing to disclose to the medical community, the FDA and consumers that use of the M-Cor Modular Hip System could and had caused serious and permanent injury;

       f.      Failing to disclose to the medical community, the FDA and consumers that insufficient tests had been undertaken to determine the safety of using the M-Cor Modular Hip System; and

       g.      Negligently representing to the medical community, the FDA and users that the M-Cor Modular Hip System was safe.

       h.      Failing to properly warn and instruct medical treaters on proper installation methods, which patients were good candidates, what system components could be interchanged and other instructions necessary to prevent failure of the femoral neck.

53.    The conduct of each of the Defendants and each of them was intentional, wanton, willful, and outrageous beyond all standards of common decency in reckless disregard and in callous indifference to the public and users of the M-Cor Modular Hip System.

54.     As a foreseeable, direct and proximate result of the wrongful acts and omissions of each Defendants, Plaintiffs sustained serious, severe, and painful personal injuries, and economic and non-economic damages as herein alleged.

## DEFENDANTS' STRICT LIABILITY AS MANUFACTURERS

## WISCONSIN STAT. § 895.047(1)(a)-(e)

55.     At all times relevant to this action, all or some of the Defendants were "manufacturers" of the M-Cor Modular Hip Systems installed on some or all of the Plaintiffs.

56.     The M-Cor Modular Hip Systems installed in the Plaintiffs had a manufacturing defect.

57.     The M-Cor Modular Hip Systems installed in the Plaintiffs departed from their intended design regardless of whether all possible care was exercised in the manufacture of the products.

58.     Also, and/or alternatively, the M-Cor Modular Hip Systems installed in the Plaintiffs were defective in design.

59.     The M-Cor Modular Hip Systems installed in the Plaintiffs were defective in design because the foreseeable risks of harm posed by the products could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of the alternative design renders the product not reasonably safe.

60.     Also, and/or alternatively, the M-Cor Modular Hip Systems installed in the Plaintiffs were defective because of inadequate instructions or warnings.

61.     The warning and/or instructions were defective because the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe.

62. The defective conditions rendered the product unreasonably dangerous to persons or property.

63. The defective conditions existed at the time the product left the control of the manufacturer.

64. The products reached the users or consumers without substantial change in the conditions in which they were sold.

65. The defective conditions were a cause of the Plaintiffs' damages as herein alleged.

## DEFENDANTS' STRICT LIABILITY AS SELLER OR DISTRIBUTOR

## WISCONSIN STAT. § 895.047(1)(a)-(e) & (2)

66. Some or all Defendants were sellers or distributors of the M-Cor Modular Hip Systems installed in the Plaintiffs.

67. Some or all of the Defendants would be liable to the Plaintiffs under Wisconsin Statute 895.047(1)(a)-(e).

68. Yet, Plaintiffs would be unable to enforce a judgment against some or all of the Defendants because of bankruptcy, insolvency or for other reasons.

69. Additionally, or alternatively, some or all of the Defendants, even if not manufactures of the M-Cor Modular Hip Systems, have contractually assumed one of the duties to manufacture, design, or provide warnings or instructions with respect to the M-Cor Products installed in the Plaintiffs.

## BREACH OF EXPRESS WARRANTY

## WISCONSIN STAT. § 402.313

70. Defendants expressed in their literature, advertisements, promotions, and through representations by their marketing team and sales agents that the M-Cor Modular Hip System

implanted in Plaintiffs was safe, effective, and fit for their use as a prosthetic hip, for which it was designed, manufactured and marketed.

71.     By making said representations, Defendants expressly warranted that the M-Cor Modular Hip System was safe and effective, and fit for the uses for which it was designed, marketed, manufactured, and distributed.

72.     As explained above, in fact, said product was not safe, effective, fit, nor proper for the use for which it was designed, manufactured, marketed and distributed.

73.     Plaintiffs and their healthcare providers, and the medical profession relied upon Defendants' express warranties.

74.     As a foreseeable, direct and proximate result of the wrongful acts and omissions of Defendants, Plaintiffs suffered damages as herein alleged.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### WISCONSIN STAT. § 402.314

75.     Defendants and each of them impliedly warranted that said product was merchantable pursuant to Wisconsin Statute § 402.314.

76.     The M-Cor Modular Hip System was not merchantable nor reasonably suitable for the ordinary purposes for which it was being used and therefore, Defendants and each of them breached the implied warranty of mechantability.

77.     As a foreseeable, direct and proximate result of the wrongful acts and omissions of each of the Defendants, Plaintiffs suffered serious injury as herein alleged.

## BREACH OF IMPLIED WARRANTY OF FITNESS

### WISCONSIN STAT. § 402.315

78. Defendants each impliedly warranted to the Plaintiffs, pursuant to Wisconsin Statute § 402-315, that the M-Cor Modular Hip System was fit for the particular purpose for which it was being used.

79. The M-Cor Modular Hip Systems was not fit for the particular purpose for which it was used and, therefore, Defendants breached this implied warranty.

80. As a foreseeable, direct and proximate result of the wrongful acts and omissions of each of the Defendants, Plaintiffs suffered serious injury as herein alleged.

## NEGLIGENT MISREPRESENTATION

81. Each of the Defendants held themselves out to Plaintiffs, their medical professionals, government agencies and others as experts regarding the design and manufacture of safe, prosthetic hip implants and the adequacy and safety of the M-Cor Modular Hip System.

82. Each of the Defendants knew or should have known that Plaintiffs and others would rely on the Defendants' purported expertise.

83. Plaintiffs did rely on the Defendants purported expertise when approving installation of the M-Cor Modular Hip Systems into their bodies.

84. Those representations by the Defendants were negligent.

85. As a direct, foreseeable and proximate cause of the Defendants' negligent misrepresentations, the Plaintiffs were seriously injured as herein alleged.

## FRAUD

86. Defendants through their literature, advertisements, promotions and through representations by their marketing team and sales agents fraudulently misrepresented information regarding the M-Cor Modular Hip System, including the propensity for such prosthesis to cause

serious and permanent physical harm by providing false, incomplete, and misleading information.

87.     Defendants made the aforesaid misrepresentations and actively concealed adverse information at a time when they knew or should have known that the products could cause permanent damage, and concealed that they did not do adequate testing.

88.     Defendants also concealed to these Plaintiffs that they were paying some or all of the Plaintiffs' orthopedic doctors to act as "agents" or "consultants" for the Defendants in an effort to increase sales revenue.

89.     At the time of Defendants' fraudulent misrepresentations and omissions, Plaintiffs and their healthcare providers were unaware of the falsity of the statements and reasonably relied upon Defendants' deceptive, inaccurate, and fraudulent misrepresentations in selecting the M-Cor Modular Hip System implanted in Plaintiffs.

90.     Defendants intentionally concealed that the use of the M-Cor Modular Hip System could cause permanent damage with the intent to defraud and mislead patients and the medical community.

91.     The concealment, misrepresentations, and false information communicated by Defendants were made with the intent to generate future profits to the significant detriment of the public and the Plaintiffs.

92.     As a foreseeable, direct and proximate result of the wrongful acts and omissions of Defendants, Plaintiffs have suffered serious injury as herein alleged.

**FRAUDULENT MISREPRESENTATION**

**WISCONSIN STAT. § 100-18**

93.     As alleged above, Defendants made assertions, representations and statements of fact to the Plaintiffs or their health care providers that are untrue, deceptive or misleading.

94.     As such, they violated Wisconsin Statute § 100-18.

95.     Defendants violation of that statute was the direct, foreseeable and proximate cause of serious injury to the Plaintiffs as herein alleged.

## UNFAIR METHODS OF COMPETITION AND TRADE PRACTICES

## WISCONSIN STAT. § 100-20

96.     By manufacturing, marketing, selling and distributing and unsafe product and by representing that the product was safe despite knowledge to the contrary, the Defendants engaged in unfair methods of competition and trade practices.

97.     As such, they violated Wisconsin Statute § 100-20.

98.     Defendants violation of that statute was the direct, foreseeable and proximate cause of serious injury to the Plaintiffs as herein alleged.

## VIOLATIONS AGAINST ELDERLY OR DISABLED PERSONS

## WISCONSIN STAT. § 100-264

99.     Plaintiffs were all elderly and/or disabled as defined by Wisconsin Statute § 100-264(1)(a)-(c).

100.    Defendants' acts were and are likely to harm elderly or disabled people disproportionately because the elderly and disabled are more likely to need a hip replacement than their healthy, young counterparts.

101.    As a result of the Defendants' acts in violation of this Statute, the Plaintiffs suffered economic and non-economic harm specified in this statute and alleged herein.

## PRODUCT SAFETY ACT VIOLATION

## WISCONSIN STATUTE § 100-42

102.  The M-Cor Modular Hips installed in the Plaintiffs are "consumer goods" as defined by Wisconsin Statute § 100-42(1)(c).

103.  Defendants violated Wisconsin Statute § 100-42(4) by manufacturing, selling and distributing for sale a consumer product not in compliance with applicable consumer product safety standards under applicable law.

104.  Defendants violation of that statute was the direct, foreseeable and proximate cause of serious injury to the Plaintiffs as herein alleged.

## SUCCESSOR LIABILITY

105.  Defendants have among each other and perhaps others, passed ownership of various business entities, the M-Cor design, intellectual property, manufacturing and distributing rights, marketing materials, inventory and other tangible and intangible property related to the M-Cor Modular Hip System.

106.  Some or all of the Defendants may have equitable, contractual or legal successor liability for some or all of the wrongful acts, negligence, strict liability, fraud, breach of warranty and other acts of predecessor companies who are or are not named as a defendant in this action.

## *RES IPSA LOQUITOR*

107.  Defendants had exclusive control over the design, manufacture, product selection, marketing, distributing and selling of the instrumentality causing injury to the Plaintiffs.

108.  Artificial hips do not typically fail in the same spot, without any particular, non-negligent reason.

109.  As such, there is a presumption that the Defendants were negligent.

-17-

110.    As a direct, proximate and foreseeable result of that negligence, Plaintiffs were injured as herein alleged.

## ACTING IN CONCERT

111.    Some or all of the Defendants acted in concert for the design, manufacture, distribution, marketing and selling of the M-Cor Modular Hip System.

112.    As such, the Defendants are and should be jointly and severally liable for all damages caused to the Plaintiffs as a result of the M-Cor Modular Hip System failures.

## AGENCY

113.    Upon information and belief, some or all of the Defendants paid a fee to some or all of the orthopedic surgeons involved in placing the M-Cor Modular Hip Systems in the Plaintiffs.

114.    As such, those participating surgeons became agents of some or all of the Defendants.

115.    For any and all allegations herein, and any such legal liability discovered through discovery, requiring privity between the Plaintiffs and the Defendants, it is alleged that this agency relationship satisfies any such privity requirement.

## VICARIOUS LIABILITY

116.    The Plaintiffs' physicians did not disclose to the Plaintiffs that some or all of the Defendants were paying their physicians money and that they had an inherent, conflict of interest in recommending the M-Cor Modular Hips to the Plaintiffs.

117.    As such, the Plaintiffs' physicians may have committed acts of fraud, negligent concealment, negligent misrepresentation, negligence, medical malpractice, surgery without informed consent, assault, battery, violation of bodily integrity, outrage, consumer protection violations and other common law and statutory causes of action and torts.

118. Those act were for the benefit of and for the furtherance of some or all of the Defendants' business enterprises.

119. Under the doctrine of vicarious liability, some or all of the Defendants are liable for the acts of these physicians.

120. Some or all of the Defendants also acted in concert with these physicians to conceal their financial arrangement with the Plaintiffs' doctors.

## DAMAGES SUSTAINED BY PLAINTIFFS

## PUNITIVE DAMAGES

## WISCONSIN STATUTE § 895.043

121. The acts alleged herein were done maliciously or in an intentional disregard for the rights of the public and these Plaintiffs. As a result, the Plaintiffs should be awarded punitive damages.

## ECONOMIC DAMAGES

122. All Plaintiffs have suffered economic loss, including, but not limited to:

a. The cost of a painful, scarring, revision surgery to remove the broken hip components and to install a new artificial hip;

b. The cost of long, difficult and painful rehabilitation following the revision surgeries;

c. Loss of income, wages, profit and earning potential, past and future;

d. Loss of household services, past and future;

e.   Need for past and ongoing medical care, care givers, prescriptions, walking aids, over the counter medications, medical, domestic and living assistance, therapeutic medical modalities and instruments, mobility devices and aids;

f.   The need for at least one additional hip revision; and

g.   Past and future travel expenses to medical appointments.

## NON-ECONOMIC DAMAGES

123.   All Plaintiffs have suffered non-economic loss, including, but not limited to:

a.   physical scarring and disfigurement;

b.   emotional and mental scarring and pain and suffering;

c.   limitations on the enjoyment of life caused by pain, limited range of motion, strength, loss of function, loss of balance, loss of stamina, and sit, stand, walk, squat, run, lift, jump and other physical limitations;

d.   Loss of position in society, friends, companionship, loneliness, isolation, pain, depression, fatigue, and sleeplessness.

e.   Fear and anxiety about their hips suddenly, unexpectedly and prematurely failing again.

f.   Loss of spousal consortium, except in the case of Plaintiff Patrice Jardanowski.

## JURY DEMAND

124.   Plaintiffs hereby demand trial by jury.

## RELIEF SOUGHT

125.    WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, awarding Plaintiffs:

a.    all damages caused by the Defendants' acts, including economic and non-economic; compensatory; and punitive damages to the maximum extent allowed in law or equity and as otherwise proven at trial, but not in an amount less that $50,000,000.00 per Plaintiff.

b.    Pre-judgment interest on all liquidated damages at the maximum rate allowed in law and equity;

c.    Recovery of all litigation costs and attorney fees to the maximum extent allowed in law and equity.

d.    Post judgment interest at the highest rate allowed in law and equity.

e.    Such other relief as the Court deems just.

DATED this 16ᵗʰ day of March, 2015.

PATRICK K. FANNIN
Attorney for the Plaintiffs
FANNIN LITIGATION GROUP, P.S.
1312 N. Monroe St.
Spokane, WA 99201
pat@fanninlaw.com
509-328-8204