# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JEROME JANUSZ, et al.,

                Plaintiffs,

      v.                            Case No. 15-CV-294

SYMMETRY MEDICAL INC., et al.,

                Defendants.

# DECISION AND ORDER

## I.      Introduction

Plaintiffs Jerome Janusz, Sharon Janusz, and Patrice Jardanowski filed the present action against various entities, including Symmetry Medical, Inc. (Symmetry), which was allegedly involved in the design, testing, manufacture, sale, distribution, marketing, or similar actions of the M-Cor Modular Hip System. (ECF No. 68.) Mr. Janusz and Ms. Jardanowski both underwent hip replacement surgery and both contend that the M-Cor neck portion of the artificial hip system broke, requiring additional surgeries to replace the hip system installed.

Symmetry seeks summary judgment on the plaintiffs' claims against it, arguing that it "played no role in the design, development, or testing of the femoral neck

component or the M-Cor System and its related warnings and instructions." (ECF No. 92, ¶ 3.) Rather, it contends, it "manufactured femoral neck components pursuant to detailed product specifications provided by Portland Orthopedics Limited." (ECF No. 92, ¶ 2.)

Following significant delays related to questions regarding the status of involuntary plaintiffs in this action, the motion is now ready for resolution. All parties have consented to have this court resolve this matter. (ECF Nos. 5, 62, 64, 99, 121, 129.) The court has subject matter jurisdiction based upon the diversity of the parties. (ECF No. 105; *see also* ECF No. 127, ¶¶ 1-5.)

## II. Facts

Although the plaintiffs responded to Symmetry's motion with their own proposed findings of fact (ECF No. 111) (to which Symmetry responded (ECF No. 116)), the plaintiffs did not respond to Symmetry's proposed findings of fact (ECF No. 92). Therefore, in accordance with Fed. R. Civ. P. 56(e)(2), the court accepts each of Symmetry's proposed facts as undisputed for purposes of Symmetry's motion.[1]

---

[1] Despite not having filed a cross-claim against Symmetry, defendants Maxx Health, Inc. and Mipro US, Inc. each responded to Symmetry's motion for summary judgment with essentially identical briefs (Maxx and Mipro are represented by the same attorney). They also responded to Symmetry's proposed findings of fact. However, they present no authority stating that a co-defendant may contest another defendant's motion for summary judgment with respect to the plaintiffs' claims. Symmetry's reply does not address Maxx's or Mipro's opposition to its summary judgment motion. The court finds that Symmetry's motion does not implicate any legally cognizable interest of Maxx or Mipro. Therefore, Maxx's and Mipro's responses to Symmetry's proposed findings of fact cannot be considered.

Symmetry is a contract manufacturer of medical devices and orthopedic implants. (ECF No. 92, ¶ 1.) Beginning in 2006 it manufactured femoral neck components pursuant to detailed product specifications provided by Portland Orthopedics Limited (Portland) for Portland's M-Cor Modular Hip System. (ECF No. 92, ¶ 2.) Portland supplied Symmetry with certain design documents. (ECF No. 116, ¶ 4.3.) One of the design documents provided by Portland to Symmetry stated that the femoral necks were to be manufactured from "ASTM F136 Ti 6AI 4V ELI Wrought Alloy material." (ECF No. 116, ¶ 5.1.) Another design document provided by Portland to Symmetry stated that the material to be used in the femoral necks was "ASTM F136 Ti 6AI 4V ELI Wrought Alloy Bar Stock." (*Id.*) Symmetry manufactured Portland's femoral neck components from "ASTM F136 Ti 6AI 4V ELI Wrought Alloy Rolled Plate" stock. (ECF No. 116, ¶ 5.2.)

Symmetry played no role in the design, development or testing of the femoral neck component or the M-Cor System and its related warnings and instructions. (ECF No. 92, ¶ 3.) Symmetry was not involved and had no control regarding the integration of the femoral neck component into the M-Cor System. (ECF No. 92, ¶ 4.)

Plaintiff Jerome Janusz underwent total right hip replacement surgery on April 21, 2009. (ECF No. 116, ¶ 2.1.) On June 16, 2009, plaintiff Patrice Jardanowski underwent total left hip replacement surgery. (ECF No. 116, ¶ 1.1.) In each case the surgeon implanted Portland's M-Cor Modular Hip System, which included an M-Cor neck

manufactured by Symmetry. (ECF No. 116, ¶¶ 1.2, 2.1; ECF No. 92, ¶¶ 6, 9.) Symmetry manufactured both necks out of raw materials that it purchased. (ECF No. 116, ¶ 4.8.) Roughly three years after their surgeries both Janusz and Jardanowski underwent a total hip revision to replace the artificial hip systems. (ECF No. 116, ¶¶ 1.3, 1.5, 2.3, 2.5.) Janusz and Jardanowski allege that their second surgeries were necessary because the M-Cor neck portion of the artificial hip system broke. (ECF No. 116, ¶¶ 1.6, 2.4.)

Symmetry admits that it manufactured the femoral neck component used in the Jardanowski and Janusz hip replacements. (ECF No. 92, ¶¶ 6, 9.) Symmetry shipped the femoral neck components it manufactured directly to Portland. (ECF No. 92, ¶¶ 7, 10.) Before it did so, it inspected, tested and certified that the femoral neck components were manufactured in conformity with the specifications and instructions from Portland. (ECF No. 92, ¶¶ 8, 11.)

Portland went bankrupt in 2009. (ECF No. 116, ¶ 4.1.)

### III.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable finder of fact could accept the non-moving party's position and return a verdict in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the

court is to "construe all evidence and draw all reasonable inferences from that evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008)); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001). The "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690-91 (7th Cir. 2010)).

## IV.    Analysis

Symmetry argues that, because it manufactured the femoral neck components in accordance with Portland's specifications, it cannot be found liable for any injuries the plaintiffs may have suffered. It was Portland who designed, developed, and tested the femoral neck component. That component was then incorporated into a final product. Moreover, the plaintiffs cannot sustain a breach of warranty claim against Symmetry because there is no privity between Symmetry and the plaintiffs. Nor can the plaintiffs point to any misrepresentation that Symmetry allegedly made. Finally, the plaintiffs'

attempts to raise claims under various Wisconsin consumer protection statutes fail because the statutes do not provide for a private cause of action.

For these reasons, Symmetry seeks summary judgment with respect to the plaintiffs' claims for negligence (ECF No. 68, ¶¶ 50-54), "defendants' strict liability as manufacturers" (ECF No. 68, ¶¶ 55-65), "defendants' strict liability as seller or distributor" (ECF No. 68, ¶¶66-69), "breach of express warranty" (ECF No. 68, ¶¶ 70-74), "breach of implied warranty of merchantability" (ECF No. 68, ¶¶ 75-77), "breach of implied warranty of fitness" (ECF No. 68, ¶¶ 78-80), "negligent misrepresentation" (ECF No. 68, ¶¶ 81-85), "fraud" (ECF No. 68, ¶¶ 86-92), "fraudulent misrepresentation" (ECF No. 68, ¶¶ 93-95), "unfair methods of competition and trade practices" (ECF No. 68, ¶¶ 96-98), "violations against elderly or disabled persons" (ECF No. 68, ¶¶ 99-101), and "product safety act violation" (ECF No. 68, ¶¶ 102-104). To the extent they might be independent claims, in its motion Symmetry does not explicitly address the plaintiffs' claims regarding "successor liability" (ECF No. 68, ¶¶ 105-06), "res ipsa loquitor," (ECF No. 68, ¶¶ 107-10), "acting in concert" (ECF No. 68, ¶¶ 111-12), "agency" (ECF No. 68, ¶¶ 113-15), or "vicarious liability" (ECF No. 68, ¶¶ 116-20).

In response the plaintiffs argue that, as a manufacturer of the component that failed, Symmetry is strictly liable for all design and manufacturing defects. The plaintiffs separately argue that their negligence claims against Symmetry should not be dismissed because facts adduced so far could support a conclusion that Symmetry was

negligent. The plaintiffs do not respond to Symmetry's other arguments in favor of summary judgment. Therefore, the court will grant Symmetry's motion for summary judgment with respect to the plaintiffs' claims alleging "breach of express warranty" (ECF No. 68, ¶¶ 70-74), "breach of implied warranty of merchantability" (ECF No. 68, ¶¶ 75-77), "breach of implied warranty of fitness" (ECF No. 68, ¶¶ 78-80), "negligent misrepresentation" (ECF No. 68, ¶¶ 81-85), "fraud" (ECF No. 68, ¶¶ 86-92), "fraudulent misrepresentation" (ECF No. 68, ¶¶ 93-95), "unfair methods of competition and trade practices" (ECF No. 68, ¶¶ 96-98), "violations against elderly or disabled persons" (ECF No. 68, ¶¶ 99-101), and "product safety act violation" (ECF No. 68, ¶¶ 102-104).

The plaintiffs requested that the court hold off on deciding Symmetry's motion for summary judgment as to the manufacturing defect claims until after the close of expert discovery because that discovery is likely to bear upon the issue. In reply, Symmetry does not oppose this request. (ECF No. 117 at 2.) Expert discovery is not scheduled to be completed until September 21, 2017. (ECF No. 42.) For administrative reasons the court is unable to simply defer ruling on the motion for that long. Therefore, in accordance with Fed. R. Civ. P. 56(d)(1), the court will deny without prejudice this aspect of Symmetry's motion.

## A. Product Liability Law in Wisconsin

The parties agree that Wisconsin law applies to this diversity action. Thus, it is this court's obligation to apply the law as it believes the Wisconsin Supreme Court

would. *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). If the Wisconsin Supreme Court has never decided a particular issue, this court considers the decisions of other Wisconsin courts as persuasive authority as to how the Wisconsin Supreme Court would decide the issue. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016). In the absence of any Wisconsin authority on an issue, the court may look to other jurisdictions that have addressed the issue, but always with the aim of predicting how the Wisconsin Supreme Court would decide the issue. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999).

Wisconsin product liability law historically had been a matter of common law. *See Dippel v. Sciano*, 37 Wis. 2d 443, 459, 155 N.W.2d 55, 63 (1967). That changed in 2011 when the Wisconsin legislature codified aspects of the common law. *See* 2011 Wis. Act. 2; Timothy D. Edwards and Jessica E. Ozalp, *A New Era: Products Liability Law in Wisconsin,* Wisconsin Lawyer (July 2011). Under Wis. Stat. § 895.047(1), a manufacturer is strictly liable when a product contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. "A product is defective in design if the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of the alternative design by the manufacturer and the omission of the alternative design renders the product not reasonable safe." Wis. Stat. § 895.047(1)(a).

The statute sets forth five defenses to a product liability claim. Wis. Stat. § 895.047(3). Not listed among them is what is referred to as the contract specification defense—the defense upon which Symmetry's summary judgment motion relies and which had not been recognized in Wisconsin prior to the enactment of the product liability statute. When a legislature codifies common law the question is whether the codification supersedes or merely supplements the common law. "It has long been established that '[s]tatutes are not to be construed as changing the common law unless the purpose to effect such change is clearly expressed therein. To have such effect the language of the statute must be clear, unambiguous and peremptory.'" *Adams v. Northland Equip. Co.*, 2014 WI 79, ¶ 96, 356 Wis. 2d 529, 568, 850 N.W.2d 272, 291 (A. Bradley, J., dissenting) (quoting *Maxey v. Redevelopment Authority of Racine*, 94 Wis.2d 375, 399, 288 N.W.2d 794 (1980) (internal quotation marks and brackets omitted); *see also* Wis. Const. art. XIV, § 13 ("Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature.").

In articulating the "legislative findings and intent" of the new product liability statute the Wisconsin legislature stated that "it is in the public interest to clarify product liability law, generally, and the application of the risk contribution theory of liability first announced by the Wisconsin Supreme Court in *Collins v. Eli Lilly Company*, 116 Wis. 2d 166 (1984), specifically, in order to return tort law to its historical, common law

roots." Wis. Stat. § 895.046(1g). That certainly suggests that, to the extent it is not inconsistent with the statute, the common law survived the codification. Therefore, especially in light of the fact that no party argues otherwise, the court concludes that Wisconsin's 2011 codification of its product liability law generally does not supersede the common law.

### B. Contract Specification Defense

"Normally, manufacturers are responsible for the harmful consequences of design defects in products they make and sell, but this is because a manufacturer's own engineers normally develop the designs used to make those products. When a manufacturer simply follows the design requirements specified by a purchaser, the design and manufacturing functions of product manufacture are separated." 2 Owen & Davis on Prod. Liab. § 14:2 (4th ed.). Under what is commonly called the "contract specification defense," "a manufacturer that makes a product strictly in accordance with the design specifications of another is not liable in negligence unless the specifications are so obviously defective and dangerous that a contractor of reasonable prudence would have been put on notice that the product was dangerous and likely to cause injury." Product Liability (LJP) § 8.07. Intuitively it makes sense that an entity that has no role in designing a product should bear no liability if the product is defectively designed.

But that intuitive reaction follows only when plaintiff's theory of recovery is negligence. *See Lenherr v. NRM Corp.*, 504 F. Supp. 165, 174 (D. Kan. 1980) ("It is logical to absolve a manufacturer from liability for a negligently designed defective product when the manufacturer is not the designer and plaintiff's theory of recovery is negligence."). In Wisconsin, product liability was and is a matter of strict liability. *Dippel*, 37 Wis. 2d at 459, 155 N.W.2d at 63; Wis. Stat. § 895.047(1). Prior to the passage of the Wisconsin product liability statute, strict product liability allowed recovery where, "although there is no proof of specific acts of negligence on the part of the seller, the 'product was in a defective condition at the time it reached the hands of the ultimate consumer.'" *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, ¶ 15, 244 Wis. 2d 758, 768, 628 N.W.2d 833, 838 (quoting *Greiten v. La Dow*, 70 Wis.2d 589, 603, 235 N.W.2d 677 (1975)). Thus, under Wisconsin common law an injured party could recover on a theory of strict liability against "all sellers in the chain of distribution—manufacturer, distributor, retailer—" without having to prove that any of them was negligent. *Fuchsgruber*, 2001 WI 81, ¶ 15, 244 Wis. 2d at 768, 628 N.W.2d at 838–39. Unlike negligence, where the focus is upon the defendant's conduct, in strict liability the focus "is on the dangerousness of the product regardless of the defendant's conduct." *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 469 (7th Cir. 1984) (applying WI law). Thus, a defendant may be blameless but strictly liable. *Id.*

The rationale behind holding sellers strictly liable even if blameless was that "'the seller is in the paramount position to distribute the costs of the risks created by the defective product,' by purchasing insurance or by passing the cost on to the consumer in the price of the product." *Fuchsgruber*, 2001 WI 81, ¶ 16, 244 Wis. 2d at 769, 628 N.W.2d at 839 (quoting *Dippel*, 37 Wis. 2d at 450, 155 N.W.2d at 58); *see also* William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L.J. 1099, 1120 (1960). Or one seller in the chain of distribution could seek indemnification from another. *See, e.g., Groschopf v. Health Ins. Risk Sharing Plan*, 81 F. Supp. 3d 686, 689 (E.D. Wis. 2014) (discussing an indemnity agreement between a manufacturer and a retailer). And each seller in the distribution chain may have contribution rights from other sellers. *Fuchsgruber*, 2001 WI 81, ¶ 15, 244 Wis. 2d at 768, 628 N.W.2d at 839. Strict product liability could be regarded as simply "a cost of production against which liability insurance can be obtained." Restatement (Second) of Torts § 402A, cmt. c. (1965).

Neither the parties nor the court has identified any case where a court applying Wisconsin law considered the applicability of the contract specification defense to a claim of strict product liability. The closest authority the court has identified is a decision of the Court of Appeals for the Seventh Circuit addressing a cousin of the contract specification defense, the government contract defense. *Tillett v. J.I. Case Co.*, 756 F.2d 591, 599–600 (7th Cir. 1985) (disapproved on other grounds by *Boyle v. United*

*Techs. Corp.*, 487 U.S. 500 (1988)). Influenced in large part by "the growing number of jurisdictions which have accepted the government contract defense in one form or another," the court concluded that "Wisconsin would recognize the government contract defense under the circumstances of [its] case." 756 F.2d at 600.

The principles underlying the contract specification defense overlap with many of those that form the basis for the government contract defense. *See, e.g.,* 4-31 Products Liability § 31.01[2]. In fact, the government contract defense derived from an early iteration of the contract specification defense. *Tillett*, 756 F.2d. at 596 (discussing *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940); *Ryan v. Feeney & Sheehan Building Co.*, 239 N.Y. 43, 145 N.E. 321 (1924)). "These cases stand for the proposition that an ordinary contractor may rely on the plans and specifications furnished to him by another unless those plans and specifications are so obviously defective that a contractor of ordinary prudence would not follow them." *Id.* However, whereas the contract specification defense is based on ordinary negligence principles, the government contract defense rests on other policy considerations, including sovereign immunity. *See* Am. L. Prod. Liab. 3d § 45:44; *see also, e.g., Hunt v. Blasius*, 55 Ill. App. 3d 14, 20, 370 N.E.2d 617, 621–22 (1977), aff'd, 74 Ill. 2d 203, 384 N.E.2d 368 (1978) (noting that the government contractor defense encourages bidders for government contracts and fosters lower costs for taxpayers). Thus, *Tillett's* conclusion that the Wisconsin Supreme Court would

recognize the government contract defense is not probative of whether the Wisconsin Supreme Court would recognize the contract specification defense.

In *Fuchsgruber*, 2001 WI 81, ¶ 11, 244 Wis. 2d at 766, 628 N.W.2d at 837, in a unanimous opinion authored by then-Justice Sykes, the Wisconsin Supreme Court reaffirmed that strict liability means just that. In that case a distributor sought to rely on Wisconsin's recently-amended contributory negligence statute to avoid liability for a manufacturing defect in a product it sold to a retailer, who in turn sold it to the consumer. The court rejected the distributor's efforts to evade strict liability on the ground that it was "merely an innocent member of the chain of distribution, who did nothing to cause or contribute to the defective condition of the product." *Fuchsgruber*, 2001 WI 81, ¶ 11, 244 Wis. 2d at 766, 628 N.W.2d at 837 (internal quotation marks omitted). The court ruled that the distributor's role in bringing about the harm to the plaintiff consumer is not relevant to liability under strict liability. The act that forms the basis for the distributor's liability "is simply the act of placing or maintaining a defective product in the stream of commerce." *Fuchsgruber*, 2001 WI 81, ¶ 24, 244 Wis. 2d at 773, 628 N.W.2d at 841 (quoting *St. Clare Hosp. of Monroe, Wis. v. Schmidt, Garden, Erickson, Inc.*, 148 Wis. 2d 750, 758, 437 N.W.2d 228, 231 (Ct. App. 1989)). The distributor's remedy for any resulting inequity was to seek contribution from the other members in the stream of distribution (even though that option was not available

because the retailer was bankrupt and the manufacturer was beyond the court's jurisdiction).

Perhaps in response to *Fuchsgruber*, when it codified the product liability law the Wisconsin legislature carved out an exception to the general rule that *all* sellers in the chain of distribution are strictly liable to persons injured by products: "A seller or distributor of a product is not liable to a claimant for damages if the seller or distributor receives the product in a sealed container and has no reasonable opportunity to test or inspect the product." Wis. Stat. § 895.047(3)(e). However, this statutory defense is unavailable to a seller or distributor if: "the seller or distributor has contractually assumed one of the manufacturer's duties to manufacture, design, or provide warnings or instructions with respect to the product[,]" "neither the manufacturer nor its insurer is subject to service of process within this state[,]" or "the claimant would be unable to enforce a judgment against the manufacturer or its insurer." Wis. Stat. § 895.047(2)(a). Accordingly, even by providing middle-men a limited defense, the legislature reinforced the foundational principle of strict liability. Holding a member of the distribution chain liable strictly because there is no other pocket for an injured plaintiff to dip into — something Symmetry suggests is "unfounded" and "illogical" (ECF No. 117 at 10) — is precisely what the legislature did in the context of an "innocent" distributor and an insolvent or unavailable manufacturer.

Symmetry cites many cases from outside of Wisconsin that it asserts "have held that even in strict liability, an independent contract manufacturer that merely fabricates a product according to another purchasing company's design is not responsible if the design later proves defective." (ECF No. 94 at 8-9.) However, contrary to Symmetry's assertion, some of the cases it cites did *not* involve claims of strict liability. *See Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995) ("Virginia does not recognize a cause of action based on strict liability in tort ...."); *Spangler v. Kranco, Inc.*, 481 F.2d 373, 375 (4th Cir. 1973) (same); *S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1239 (9th Cir. 1982) ("[A]s a matter of California law, the doctrine of strict liability does not apply to negotiated transactions between large commercial enterprises."); *Newbury v. Mannesmann Dematic Corp.*, No. CIV. 03-4020-JLF, 2005 WL 1243184, at *3 (S.D. Ill. May 24, 2005) ("In a negligence setting, Illinois law is clear that an installation contractor is not liable for the overall safety of a product that it installs according to another's specifications, unless the specifications are so obviously dangerous that no reasonable contractor would follow them."); *Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 376 A.2d 88, 90 (Del. 1977) (discussing contract specification in the context of the plaintiff's negligence claims; strict liability claims were dismissed due to plaintiff's failure to establish a "defective condition"); *Jordan v. Whiting Corp.*, 49 Mich. App. 481, 486, 212 N.W.2d 324, 328 (1973), rev'd, 396 Mich. 145, 240 N.W.2d 468 (1976) (finding "[t]here simply is no case against [electrical contractor] in negligence or

in warranty" related to contractor's work electrifying crane that electrocuted worker after worker attempted repair without turning off the power); *Szatkowski v. Turner & Harrison, Inc.*, 184 A.D.2d 504, 504, 584 N.Y.S.2d 170, 171 (1992) ("The plaintiff commenced this action, inter alia, alleging that the respondent was negligent for creating and/or failing to warn of a dangerous condition."); *Duncan v. CRS Sirrine Engineers, Inc.*, 337 S.C. 537, 543 fn. 3, 524 S.E.2d 115, 118 (Ct. App. 1999) (noting that plaintiff did not preserve claim of strict liability for appeal but stating that it would nonetheless fail because the defendant's "assembly work amounted to a service, rather than a product, and South Carolina's strict liability statute does not apply to services").

Some of the other cases cited by Symmetry involved claims against a manufacturer that did not manufacture the entire allegedly dangerous product but only a component. *Koonce v. Quaker Safety Prod. & Mfg. Co.*, 798 F.2d 700, 715 (5th Cir. 1986) ("Under Texas law, strict liability for component part manufacturers is limited when the component part is integrated into a larger unit before distribution."); *Sperry v. Bauermeister, Inc.*, 4 F.3d 596, 598 (8th Cir. 1993); *Orion Ins. Co. v. United Tech. Corp.*, 502 F. Supp. 173, 176–78 (E.D. Pa. 1980) (dismissing strict liability claim against manufacturer of a component of a helicopter that crashed, noting that injury resulted not from a defect in the component but from the helicopter manufacturer's use of that component); *Duffee By & Through Thornton v. Murray Ohio Mfg. Co.*, 896 F. Supp. 1071, 1077 (D. Kan. 1995); *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 41, 675 A.2d 620, 623

(1996); *Molina v. Kelco Tool & Die, Inc.*, 904 S.W.2d 857, 861 (Tex. App. 1995), writ denied (Feb. 9, 1996) ("A component part manufacturer that supplies a product in accordance with a purchaser's specifications is free from strict liability if the component part itself is not defective."). As discussed below, a component manufacturer may avoid strict liability if it can show that its product was incorporated unchanged into a larger product. Thus, cases involving the applicability of strict liability to a component manufacturer implicate concerns not necessarily applicable to questions of strict liability generally.

Further, some of the cases cited by Symmetry did not deal with circumstances sufficiently analogous to be helpful. *See Weggen v. Elwell-Parker Elec. Co.*, 510 F. Supp. 252, 255 (S.D. Iowa 1981) (addressing an employer's responsibility to indemnify a contractor and the employer's right to receive reimbursement of workmen's compensation payments paid to employee injured as a result of a product manufactured by defendant to the specifications of employer); *Hunt*, 384 N.E.2d at 371 (addressing contractor's liability for road sign manufactured and installed according to government contract); *Lorenzen v. Bi-State Ford*, No. L-93-337, 1994 WL 411511, at *4 (Ohio Ct. App. Aug. 5, 1994) (noting that defendant only "attached the winch assembly to the truck and made some behind the cab modifications" consistent with employer's specifications and thus was not liable for worker's injures because it was not a manufacturer).

Finally, many of the cases cited by Symmetry involved injured employees' claims against defendants who manufactured allegedly unsafe machinery to the specifications of the employer. *See Garrison v. Rohm & Haas Co.*, 492 F.2d 346 (6th Cir. 1974) (while using it for unintended purpose, employee injured by dolly manufactured by defendant to specifications of employer); *Moon v. Winger Boss Co.*, 205 Neb. 292, 299, 287 N.W.2d 430, 434 (1980) (holding that manufacturer is not liable for injuries to employee by product manufactured to employer's plans and specifications provided the defect is not "so obviously, patently, or glaringly dangerous that a manufacturer exercising ordinary care under the circumstances then existing would not follow them"); *Bloemer v. Art Welding Co.*, 884 S.W.2d 55, 57 (Mo. Ct. App. 1994) (holding that contractors who constructed a large machine to employer's specifications cannot be liable to injuries caused to employee as a result of the absence of certain safety features). In *Housand v. Bra-Con Indus.*, 751 F. Supp. 541 (D. Md. 1990), the court dismissed a strict liability claim against the manufacturer of electrical controls for a machine, designed by an employer, that injured one of its employees. In doing so, the court stated that

> [t]here is absolutely no basis in the record to support a contention that [the manufacturer] actually created any hazardous condition in the transfer area. At the most they merely failed to perceive the defect which GM had itself created by failing to provide for an automatic shut-off device in the transfer area. Such an omission does not provide a sufficient basis for rendering the superseding intervening cause doctrine inapplicable.

*Id*. at 545-56.

The intersection of product liability and workers compensation law arguably distinguishes these cases from the present case. Workers compensation laws bar a direct action against an employer. To obtain relief an injured worker may rely on theories of product liability to sue a manufacturer. But if the manufacturer can obtain contribution or indemnification from the employer who designed the product, the net effect undermines the policies that underlie the workers compensation scheme.

Granted, in the cases cited by Symmetry the courts generally did not explicitly discuss the policies underlying workers compensation laws. *Cf. Weggen*, 510 F. Supp. at 254 (noting that Iowa workers compensation law precluded third-party manufacturer of product made to employer's specifications from recovering from employer for injures to employee). In fact, the courts often articulated broad rules with no suggestion that they would not apply in the worker context. *See, e.g., Moon*, 205 Neb. at 299–300, 287 N.W.2d at 434 ("The better rule, it seems to us, and the one we adopt, is that a manufacturer is not liable for injuries to a user of a product which it has manufactured in accordance with plans and specifications of one other than the manufacturer, except when the plans are so obviously, patently, or glaringly dangerous that a manufacturer exercising ordinary care under the circumstances then existing would not follow them."); *Bloemer*, 884 S.W.2d at 56 ("We hold that a contractor's compliance with its customer's plans and specifications is, with limited exceptions not applicable in this case, a complete defense to strict liability and negligence claims based on defective design."). Nonetheless, there

are legitimate policy reasons for closing legal back doors that might be used to circumvent workers compensation laws that do not apply to ordinary claims of strict liability. *Cf. Glassey v. Cont'l Ins. Co.*, 176 Wis. 2d 587, 601, 500 N.W.2d 295, 301 (1993) ("However, 'the absence of a tort remedy against the employer should not of itself give rise to a third-party remedy against a manufacturer or distributor who merely furnished the product to the employer.'") (quoting 3 American Law of Products Liability 3d, sec. 43:1 (1987); citing *Robinson v. Reed-Prentice Division of Package Machinery Co.*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 721, 403 N.E.2d 440, 444 (1980)). Thus, just as the government contractor or the narrower military contractor defenses exist, in part, to thwart plaintiffs' end run around immunity doctrines, so, too, might a narrow exception for cases where workers are injured by machines designed by their employers. Because those policy concerns are not present here, the cases relied upon by Symmetry are not instructive as to whether the Wisconsin Supreme Court would recognize the contract specification defense to a strict product liability claim.

Given the Wisconsin Supreme Court's articulation of Wisconsin common law in *Fuchsgruber* and the recent codification of product liability law reaffirming Wisconsin's commitment to the principles of strict liability, the court concludes that, if presented with the question of whether the contract specification defense applies to a claim of strict liability under Wisconsin law, the Wisconsin Supreme Court would hold that it does not. The Wisconsin Supreme Court was clear – strict liability means strict liability.

It exists to shift costs associated with unsafe products to those who are in the best position to disperse those costs (be it through insurance, indemnity, or some other means).

Indeed, Symmetry notes this oft-stated principle of Wisconsin product liability law: "[T]he risk of loss associated with the use of defective products should be *borne by those who have created the risk and who have reaped the profit by placing a defective product in the stream of commerce.*" *Westphal v. E.L. du Pont de Nemours & Co.*, 531 N.W.2d 386, 390 (Wis. Ct. App. 1995) (emphasis in original) (quoting *Kemp v. Miller*, 453 N.W.2d 872, 879 (Wis. 1990)). (ECF No. 94 at 7; ECF No. 117 at 9; ECF No. 117 at 10.) But Symmetry suggests that this language indicates that a manufacturer who merely manufactures a product designed by someone else cannot be held liable to the user of the product. In truth, this statement stands for exactly the opposite proposition: it should be sellers (which under product liability law might be anyone in the distribution chain) rather than the injured consumer who bear the costs associated with a defective product. Sellers are in the best position to disperse or absorb the costs associated with defective products.

Having said that, *strict* liability does not mean *absolute* liability. *Horst v. Deere & Co.*, 2009 WI 75, ¶ 27, 319 Wis. 2d 147, 161, 769 N.W.2d 536, 543. Concepts such as "a risk-utility analysis" and the consumer expectations test exist to negate concerns that a seller will be found liable for injuries resulting from useful but inherently dangerous

products like "knives, guns, medicine, and even sugar in the case of a diabetic." *Id.* The court does not believe that a rejection of the contract specification defense represents a slide toward "an enveloping net of absolute liability," *Hopfer v. Neenah Foundry Co.*, 477 S.W.3d 116, 125 (Mo. Ct. App. 2015). Rather, the court concludes that the defense is inconsistent with traditional concepts of strict liability, which are based not upon the negligence or fault of a defendant but rather upon "the nature or condition of the product." *Glassey*, 176 Wis. 2d at 600, 500 N.W.2d at 301.

The contract specification defense significantly undermines the policies underlying strict liability. Therefore, the court concludes that the defense does not exist under Wisconsin law. Accordingly, even if Symmetry had no role in designing the femoral neck, as a manufacturer it may be strictly liable under Wisconsin law for design defects in the product.

### C. Component Manufacturer

Symmetry also argues that a manufacturer of a component part cannot be liable under Wisconsin law for injuries resulting from the defective design of the final product into which the component part is later integrated. (ECF No. 94 at 10.) It contends that it manufactured only the femoral neck component of a modular hip replacement system. As such, the femoral neck components underwent substantial change in their condition by the time they reached Mr. Janusz and Ms. Jardanowski. (ECF No. 94 at 11.)

A manufacturer of a component that is incorporated into a larger product is not necessarily strictly liable should the larger product prove defective. *City of Franklin v. Badger Ford Truck Sales, Inc.*, 58 Wis. 2d 641, 649–50, 207 N.W.2d 866, 869–70 (1973); Restatement (Second) of Torts § 402A, cmt. q. (1965) ("It is no doubt to be expected that where there is no change in the component part itself, but it is merely incorporated into something larger, the strict liability will be found to carry through to the ultimate user or consumer."). A component manufacturer is strictly liable only if the injury is directly attributable to a defect in the component and there was no change in the component that was "merely incorporated into something larger." *Franklin*, 58 Wis. 2d at 649–50, 207 N.W.2d at 869–70. But "[w]here the component part is subject to further proceeding or substantial change, or where the causing of injury is not directly attributable to defective construction of the component part, the result might be different." *Id.* at 649, 207 N.W.2d at 870. The Wisconsin legislature in 2011 explicitly codified this common law requirement that a manufacturer is strictly liable only if "the product reached the user or consumer without substantial change in the condition in which it was sold." Wis. Stat. § 895.047(1)(d); *see also Dippel*, 37 Wis. 2d at 460, 155 N.W.2d at 63.

Therefore, in order to maintain a strict products liability claim against a component manufacturer, "the plaintiff must show that the product has not undergone a substantial and material change from the time it left the manufacturer or seller. When the condition of a product at the time of an accident is substantially and materially

different from its condition at the time it left the control of the manufacturer or seller, the plaintiff will be unable to prove its prima facie case and the strict products liability claim must be dismissed." *Glassey*, 176 Wis. 2d at 600, 500 N.W.2d at 301 (citing *Berry v. Gibson*, 141 Ill.App.3d 876, 96 Ill.Dec. 219, 221, 491 N.E.2d 33, 35 (1986); 3 American Law of Products Liability 3d sec. 43:1 (1987)). "A substantial and material change is a change in the design, function or character of the product linked to the accident." *Id.* "A product need not be completely obliterated or undergo a chemical transformation to be substantially changed, rather [courts] look at whether the product has been combined with another or treated in such a manner that renders it substantially and materially different from its condition when it left the control of its manufacturer." *Westphal*, 192 Wis. 2d at 362, 531 N.W.2d at 391.

In *Westphal* the plaintiff alleged that she was injured by a medical device containing Teflon that was surgically implanted in her jaw. The court concluded that the manufacturer of Teflon was not strictly liable because the Teflon was substantially changed by a subsequent manufacturer prior to its incorporation into the medical device. Specifically, the court stated, "when a manufacturer subjects a component to an eight-step patented manufacturing process and the physical properties of that component are physically changed, that product has been substantially changed as a matter of law." *Westphal*, 192 Wis. 2d at 362, 531 N.W.2d at 390.

In *Glassey*, 176 Wis. 2d at 600, 500 N.W.2d at 301, the court concluded that a manufacturer of a spray tank was not strictly liable for injuries sustained when the cap of the pressurized tank blew off because its cap had been replaced with a non-standard cap. However, in *Franklin* the maker and supplier of a defective wheel could not avoid strict liability for injuries resulting from the failure of the wheel simply because the wheel was then installed on a firetruck. *Id.* at 648–49, 207 N.W.2d at 869–70.

In *Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 685, 280 N.W.2d 226, 232 (1979), the court concluded that a manufacturer of a conveyor was not strictly liable for injuries to a worker when another worker started the conveyor without warning. The court concluded that there was nothing wrong with the conveyor; the defect was in the electrical controls that were subsequently installed to operate the conveyor.

In contrast, here the alleged defect was in the component that Symmetry actually manufactured. The femoral neck manufactured by Symmetry was not modified after it left Symmetry's control in the sense of the modifications undertaken in *Glassey* or *Westphal*. Rather, based on the facts presently before the court, Symmetry's femoral neck was "merely incorporated into something larger," *Franklin,* 58 Wis. 2d at 649–50, 207 N.W.2d at 869–70, and put to its intended use. It was physically joined to other components to create a finished product. This is much more akin to mounting a tire on a truck as in *Franklin* than the chemical manipulation at issue in *Westphal.*

Therefore, with respect to Symmetry's motion for summary judgment on the basis that the component it manufactured was substantially changed after it left its control, the court concludes that, in light of *Franklin*, the court must deny the motion.

**D. Negligence**

"Strict liability and negligence are alternative theories of recovery in Wisconsin products liability cases." *Glassey*, 176 Wis. 2d at 602, 500 N.W.2d at 301. Therefore, the plaintiffs are permitted to present claims for both negligence and strict liability.

The court understands that the plaintiffs allege both that Symmetry was strictly liable for any design defect in the femoral neck and also, separately, that Symmetry negligently designed aspects of the femoral neck. What the plaintiffs identify as alleged design work done by Symmetry (e.g., using plate stock instead of bar stock, cutting the neck instead of forging or casting, and failing to "to orient the fracture surface to take advantage of the direction with the best mechanical properties") (ECF No. 110 at 7-8, 12-13) are matters of manufacturing. Moreover, Symmetry stated in its proposed findings of fact that it "played no role in the design, development, or testing of the femoral neck component or the M-Cor System and its related warnings and instructions." (ECF No. 92, ¶ 3.) Because the plaintiffs did not respond to Symmetry's proposed findings of fact, this fact, like all of Symmetry's other proposed facts, is deemed admitted for the purposes of the present motion. Therefore, the court concludes that Symmetry is

entitled to summary judgment as to the plaintiffs' claim that Symmetry negligently designed the femoral neck.

**IT IS THEREFORE ORDERED** that Symmetry's motion for summary judgment with respect to the plaintiffs' "breach of express warranty" (ECF No. 68, ¶¶ 70-74), "breach of implied warranty of merchantability" (ECF No. 68, ¶¶ 75-77), "breach of implied warranty of fitness" (ECF No. 68, ¶¶ 78-80), "negligent misrepresentation" (ECF No. 68, ¶¶ 81-85), "fraud" (ECF No. 68, ¶¶ 86-92), "fraudulent misrepresentation" (ECF No. 68, ¶¶ 93-95), "unfair methods of competition and trade practices" (ECF No. 68, ¶¶ 96-98), "violations against elderly or disabled persons" (ECF No. 68, ¶¶ 99-101), and "product safety act violation" (ECF No. 68, ¶¶ 102-104) claims is **granted**.

**IT IS FURTHER ORDERED** that Symmetry's motion for summary judgment with respect to the plaintiffs' manufacturing defect claims (both in negligence and strict liability) is **denied without prejudice**.

**IT IS FURTHER ORDERED** that Symmetry's motion for summary judgment with respect to the plaintiffs' claim of negligent design is **granted**.

**IT IS FURTHER ORDERED** that Symmetry's motion for summary judgment is **denied in all other respects**.

Dated at Milwaukee, Wisconsin this 9th day of June, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge